UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DANIEL W. BURTON,<br>    *Plaintiff*,<br><br>*vs.*<br><br>NANCY BERRYHILL,[1]<br>*Acting Commissioner of the Social Security Administration*,<br>    *Defendant*. | No. 1:16-cv-01270-JMS-MJD |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

On April 25, 2013, Daniel W. Burton filed a claim for disability insurance benefits alleging a disability onset date of February 10, 2013. [Filing No. 13-2 at 26.] His claim was initially denied on August 6, 2013, and upon reconsideration on September 17, 2013. A hearing was held on October 24, 2014 before Administrative Law Judge Mary F. Withum (the "ALJ"). [Filing No. 13-2 at 37-65.] The ALJ issued a decision on January 7, 2015, determining that Mr. Burton was not disabled as defined by the Social Security Act. [Filing No. 13-2 at 26-32.] The Appeals Council denied his request for review on April 11, 2016, making the ALJ's decision the final decision of the Commissioner subject to judicial review. [Filing No. 13-2 at 2-7.] Mr. Burton then filed this civil action under 42 U.S.C. § 405(g), asking this Court to review his denial of benefits.

**I.**
**STANDARD OF REVIEW**

"The Social Security Act authorizes payment of disability insurance benefits and Supplemental Security Income to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212,

---

[1] The Court has substituted Nancy Berryhill as proper Defendant to this action, given that she became the Acting Commissioner of the Social Security Administration on January 23, 2017. *See* "Meet Our New Acting Commissioner," Social Security Administration Blog, *available at* http://blog.ssa.gov/meet-our-new-acting-commissioner/ (last visited February 21, 2017).

1

214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last . . . not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform his past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four. Once step four

is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's RFC by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. §§ 416.920(e)(g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II.
### RELEVANT BACKGROUND

Mr. Burton was 53 years old at the time of the hearing before the ALJ.[2] [Filing No. 13-5 at 2; Filing No. 13-2 at 26.] He finished the eleventh grade and earned a GED. [Filing No. 13-2

---

[2] Both parties provided a detailed description of Mr. Burton's medical history and treatment in their briefs. [Filing No. 15; Filing No. 18.] Because that implicates sensitive and otherwise confidential medical information concerning Mr. Burton, the Court will simply incorporate those facts by reference herein and only detail specific facts as necessary to address the parties' arguments.

at 42.] His previous work experience includes working as a foreman, supervisor, and maintenance technician. [Filing No. 13-2 at 42.] Mr. Burton seeks disability benefits because of functional limitations due to degenerative disc disease, plantar fasciitis, kidney disease, and osteoarthritis. [Filing No. 13-2 at 40.]

Using the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4), the ALJ ultimately concluded that Mr. Burton is not disabled. [Filing No. 13-2 at 32.] The ALJ found as follows:

- At Step One of the analysis, the ALJ found that Mr. Burton meets the insured status requirements of the Social Security Act and has not engaged in substantial gainful activity since his alleged onset date.[3] [Filing No. 13-2 at 28.]

- At Step Two of the analysis, the ALJ found that Mr. Burton has the following severe impairments: osteoarthritis and chronic renal failure. [Filing No. 13-2 at 28.]

- At Step Three of the analysis, the ALJ concluded that Mr. Burton did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 13-2 at 28-29.] The ALJ considered various listings in making that conclusion, but ultimately found that Mr. Burton did not meet any of them. [Filing No. 13-2 at 28-29.]

- After Step Three but before Step Four, the ALJ found that Mr. Burton had the residual functional capacity ("RFC") to perform "light work as defined in 20 CFR 404.1567(b)

---

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.* involves significant physical or mental activities) and gainful (*i.e.* work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a) and 20 C.F.R. § 416.972(a).

4

except never operate foot controls; never climb ladders, ropes, or scaffolds." [Filing No. 13-2 at 29.]

- At Step Four of the analysis, the ALJ found that Mr. Burton was unable to perform "any past relevant work." [Filing No. 13-2 at 31.]

- At Step Five of the analysis, the ALJ concluded that considering Mr. Burton's age, education, work experience, and RFC, "there are jobs that exist in significant numbers in the national economy that the claimant can perform." [Filing No. 13-2 at 31.] The ALJ relied on testimony from the vocational expert ("VE") that identified jobs such as marker, cashier, and ticket seller that the VE testified Mr. Burton could perform. [Filing No. 13-2 at 31-32.]

Mr. Burton sought review of the ALJ's decision from the Appeals Council, but that request was denied on April 11, 2016, making the ALJ's decision the Commissioner's final decision subject to judicial review. [Filing No. 13-2 at 2.] Mr. Burton now seeks judicial review under 42 U.S.C. § 405(g), asking this Court to review his denial of benefits. [Filing No. 1.]

### III.
#### DISCUSSION

Mr. Burton presents two overarching arguments, which the Court reorders and restates as follows: 1) whether the ALJ erroneously gave little weight to the opinion of treating physician Dr. Kozarek regarding Mr. Burton's abilities to sit, stand, walk, and stoop, and 2) whether the ALJ erred at Step 5 by relying on irrelevant unskilled sedentary jobs to conclude that light work existed in the national economy that Mr. Burton could perform. [Filing No. 15 at 6-17.] The Court will address each of these issues in turn.

### A. ALJ's Consideration of Treating Physician's Opinion

Mr. Burton argues that the ALJ failed to properly weigh the opinion of treating physician Dr. Kozarek regarding Mr. Burton's ability to sit, stand, walk, and stoop. [Filing No. 15 at 12-13.] He emphasizes his extensive treatment history with Dr. Kozarek and contends that the ALJ erred by summarily giving little weight to Dr. Kozarek's opinion simply because she utilized a checklist form rather than provide specific explanations for her conclusions. [Filing No. 15 at 15-16.] Mr. Burton contends that this error impacted the ALJ's decision at Step Five and that his case must be reversed and remanded for further review.

In response, the Commissioner argues that the ALJ properly considered the opinion of Dr. Kozarek. [Filing No. 18 at 7-10.] The Commissioner emphasizes that the ALJ may discredit a medical opinion as long as she provides good reasons for doing so, such as the opinion not being supported by the medical findings or otherwise inconsistent with other evidence in the record. [Filing No. 18 at 8.] The Commissioner points out that the ALJ favorably cited the opinions of three state agency medical consultants. [Filing No. 18 at 8-9.]

On reply, Mr. Burton argues that the Commissioner failed to address many of his arguments regarding the ALJ's alleged failure to properly consider the opinion of Dr. Kozarek. [Filing No. 19 at 8-9.] Mr. Burton emphasizes that the Commissioner, like the ALJ, relied on non-binding, out-of-Circuit precedent to support the ALJ's summary dismissal of Dr. Kozarek's opinion conveyed on a form. [Filing No. 19 at 9-10.] Mr. Burton also argues that the Court should reject any *post hoc* rationalization that the Commissioner uses to support the ALJ's decision because it violates the *Chenery* doctrine. [Filing No. 19 at 10.]

An ALJ must give a treating physician's opinion controlling weight if it is both "(1) supported by medical findings; and (2) consistent with substantial evidence in the record." *Elder*

*v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (citation omitted). If the ALJ finds that the opinion is not entitled to controlling weight, the ALJ must still assess the proper weight to give to the opinion. *Id.* This involves consideration of several facts, including the "length, nature, and extent of the physician and claimant's treatment relationship, whether the physician supported his or her opinions with sufficient explanations, and whether the physician specializes in the medical conditions at issue." *Id.* (citations omitted). If the ALJ "discounts the physician's opinion after considering these factors," a reviewing court "must allow that decision to stand so long as the ALJ minimally articulated his reasons" for doing so. *Id.* (internal quotation marks and alteration omitted). This is a "very deferential standard," *id.*, but even so, a court must assure itself that the ALJ "offer[ed] 'good reasons' for discounting [the] treating physician's opinion." *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (citation omitted).

It is undisputed that Mr. Burton had an extensive treating physician relationship with Dr. Kozarek, as evidenced by medical records spanning treatment from 2011 through at least 2014. [*See, e.g.*, Filing No. 13-11 at 2-5; Filing No. 13-11 at 18-48; Filing No. 13-11 at 57-62; Filing No. 13-11 at 84-96.] Despite this extensive evidence, the ALJ's opinion does not reference Dr. Kozarek by name or summarize Dr. Kozarek's treatment history or findings. [Filing No. 13-2 at 26-32.] Instead, the ALJ summarily gave Dr. Kozarek's opinion "little weight" because she submitted a "fill in a blank or check off a box" form to support her opinion. [Filing No. 13-2 at 31.] While the ALJ cited non-binding, out-of-Circuit precedent to support that decision, [Filing No. 13-2 at 31 (citing *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993))], the Seventh Circuit Court of Appeals has actually held that "[a]lthough by itself a check-box form might be weak evidence, the form takes on greater significance when it is supported by medical records," *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010). Additionally, as Mr. Burton points out, whether Dr.

Kozarek supported her opinion with sufficient explanations is only one factor to be considered when determining how much weight the ALJ should afford the opinion of a treating physician. *Elder*, 529 F.3d at 415 (citing 20 C.F.R. § 404.1527(d)(3)).

Additionally, the Court agrees with Mr. Burton that to the extent the Commissioner tries to support the ALJ's treatment of Dr. Kozarek's opinion by pointing out alleged inconsistencies, [Filing No. 18 at 10], such *post hoc* rationalizations violate the well-established *Chenery* doctrine, *see Parker v. Astrue*, 597 F.3d 920, 922-23 (7th Cir. 2010) (emphasizing that it violates the *Chenery* doctrine for the Commissioner to defend the ALJ's decision on grounds that the ALJ has not embraced) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943)). Given that the ALJ did not even reference Dr. Kozarek by name, the Commissioner's observations regarding alleged inconsistencies in Dr. Kozarek's opinions will not be considered as a basis to affirm the ALJ's decision.

In sum, the Court agrees with Mr. Burton that the ALJ erred by not properly explaining why controlling weight was not given to the opinion of Mr. Burton's treating physician, Dr. Kozarek. The ALJ erred by summarily giving Dr. Kozarek's opinion light weight without considering the applicable factors for determining the weight to afford to a treating physician opinion if controlling weight is not giving. *Elder*, 529 F.3d at 415. This error may have affected the ALJ's ultimate disability determination because Dr. Kozarek opined that Mr. Burton had functional limitations in lifting and carrying and pushing and pulling, which were not accounted for in the assigned RFC. [Filing No. 13-11 at 6-10; Filing No. 13-2 at 29-30.] Dr. Kozarek also opined that on average, Mr. Burton would have miss more than four days of work per month as a result of his impairments or treatment. [Filing No. 13-11 at 10.] If credited, this limitation would preclude Mr. Burton from doing the jobs the VE identified at the hearing. [Filing No. 13-2 at 65

(VE's opinion that one or more unexcused absences in a month on a consistent basis would preclude work).] Thus, the Court must reverse and remand the decision of the ALJ denying Mr. Burton disability benefits.

**B. Step Five Issue**

Because the Court has already found that the ALJ committed reversible error, it will summarily address the Step Five issue Mr. Burton raises to the extent it could impact the case on remand. Mr. Burton emphasizes that the ALJ concluded that he could do light work. [Filing No. 15 at 8 (citing Filing No. 13-2 at 30-31).] He claims that the ALJ erred at Step Five, however, because she relied on the VE's testimony regarding the number of available unskilled sedentary jobs, not light work jobs. [Filing No. 15 at 6.] The Commissioner concedes in her response that the VE's "testimony may have come across as confusing," but she argues that substantial evidence supports the ALJ's Step Five determination. [Filing No. 18 at 10-11.]

The Court notes that while someone who can do light work can typically also do sedentary work, this may not be true if there are additional limiting factors such as an inability to sit for long periods of time. 20 C.F.R. § 404.1567(b). In fact, Dr. Kozarek—whose opinion the Court already concluded the ALJ erroneously summarily limited—opined that Mr. Burton could sit "less than 2 hours" in an eight-hour work day with normal breaks. [Filing No. 13-11 at 8.] Thus, on remand, the ALJ should be sure to ask the VE clear questions so that the VE can clearly state the number of available jobs at the skill and applicable work level the ALJ determines is appropriate for Mr. Burton on remand.

## IV.
### CONCLUSION

For the reasons stated herein, the Court **VACATES** the ALJ's decision denying Mr. Burton supplemental security income and **REMANDS** this matter for further proceedings consistent with this opinion pursuant to 42 U.S.C. § 405(g) (sentence four). Judgment shall issue accordingly.

Date: 2/22/2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via CM/ECF:**

J. Frank Hanley, II
jfrankhanley@jfrankhanley.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov